## State *vs.* Morris Cohen.

JULY 21, 1961.

PRESENT: Condon, C. J., Roberts, Paolino, Powers and Frost, JJ.

POWERS, J.  This is an indictment for murder.  A jury in the superior court found the defendant guilty of manslaughter.  His motion for a new trial was heard and denied by the trial justice.  The case is before us on his exceptions to the denial in part of his motion for a directed verdict and the denial of his motion for a new trial, and also on his exceptions to certain evidentiary rulings and certain portions of the charge.

The defendant and his wife were married in the city of Providence about ten days prior to her death on October 24, 1958.  His uncontradicted testimony is that they had been acquainted for many years, having first met in 1930, and that during the years they had remained on friendly terms. He had never married, but she had.  Her first husband died about six months before her marriage to defendant.  After their marriage, defendant and his wife took up residence on Emerson street in Providence, where he had lived with his mother for some years prior to her death.

The house on Emerson street is a three-story dwelling. The defendant and his wife occupied the second-floor apartment. The Richmond family occupied the apartment on the first floor and the Pfeiler family occupied the third-floor apartment. It is undisputed that on the evening of October 23, 1958, after leaving their respective places of employment, defendant and his wife had gone to their apartment and remained there during the night and that she died in the apartment sometime early on the morning of October 24.

The defendant was thereafter indicted and tried for the murder of his wife. After the state and defendant had rested, he moved for a directed verdict of acquittal. The trial justice granted the motion as to the charge of murder in the first degree, but denied it as to the charge of murder in the second degree and manslaughter, on which charges the case was submitted to the jury. After the verdict of manslaughter had been returned, defendant filed a motion for his discharge on the ground that there was "no evidence in the record warranting a conviction for manslaughter * * *." The trial justice denied this motion.

While we feel that such a motion has no standing in criminal trial procedures in this state, we do not deem it necessary to pass upon defendant's exception to the ruling thereon since the motion is in the nature of a motion to direct a verdict of acquittal. *State* v. *Meen,* 171 Wis. 36; *People* v. *Ledwon,* 153 N. Y. 10; *People* v. *Bennett,* 49 N. Y. 137. In the *Bennett* case, with reference to such a motion the New York court said at page 140: "Although the motion was, in form, for an absolute discharge of the prisoner, it may be regarded, in substance, as a request to direct an acquittal * * *." Viewed in that light, the motion was clearly superfluous, defendant having already made a timely motion for a directed verdict and having duly saved his exception to the denial thereof. The defendant's exception to the denial of his motion for discharge is therefore overruled.

218

We shall next consider defendant's exception to the denial in part of his motion for a directed verdict of acquittal. It is well settled that on such a motion in a criminal case the evidence and all inferences which can reasonably be drawn therefrom must be viewed in the light most favorable to the state, and that the trial justice may not weigh the evidence thereon or pass upon the credibility of witnesses. *State* v. *St. Angelo,* 72 R. I. 412, 417; *State* v. *Wright,* 70 R. I. 39. This exception, in our opinion, is clearly lacking in merit.

The effect of defendant's motion, although inferentially bearing on his guilt or innocence, was to deny that the state had proved, beyond a reasonable doubt, that the death of Anna F. Cohen resulted from the commission of a crime and could not within reason have resulted from an accident or natural causes attributable to her general physical condition. It is elementary that unless the state established the corpus delicti beyond a reasonable doubt the defendant was entitled to an acquittal.

Although no person other than defendant could describe the circumstances in which the deceased came to her death, because it is undisputed that he alone was with her at the time, an autopsy was performed on behalf of the state by Dr. Gary P. Paparo. He observed the condition of the corpse, the multiple bruises and the condition of the throat, and from these factual conditions expressed the opinion that death resulted from manual strangulation. Admittedly opinion evidence, it was based on the observation of a trained mind and was not mere speculation. It constituted evidence competent for consideration by the jury which, coupled with the photographic exhibits and the testimony of Dr. Joseph A. Hindle that death could not have resulted from an attack of asthma, could be weighed by the jury in passing on the question of criminal culpability.

That the defense offered an alternative theory, namely, that the deceased met her death from an asthmatic attack

and that the injuries to her throat resulted from her striking some part of the bed in her fall, does not deviate from the principle that both contentions are questions of fact properly and exclusively within the province of the jury. In passing on the question of corpus delicti, it was their duty to resolve it on the basis of the evidence before them beyond a *reasonable* doubt, as distinguished from beyond *all* doubt. This exception is therefore overruled.

The defendant preserved 267 exceptions on evidentiary rulings relating to the admission and exclusion of testimony, to the denial of motions to strike, and to admit certain exhibits. We have carefully examined all of these exceptions and find them to be without merit. Conceding that in some instances the rulings to which exceptions were taken may have constituted technical error, we are not persuaded that any of them was prejudicial. These exceptions are overruled.

The defendant further excepts to the refusal of the trial justice to charge the jury that "Proof of motive is essential in this case and in its absence, you must find the defendant not guilty." He bases the request for this charge upon the language in *State* v. *Gordon*, 1 R. I. 179, 188. The defendant misconceives the import of that decision. Therein this court simply held that evidence of motive, if any exists, must be submitted to the jury to aid it in evaluating incontrovertible evidence from which the mind might tend to shrink in the absence of a moving cause.

Moreover, at defendant's request the trial justice did charge the jury that there was no evidence of motive in this case and its absence was a strong circumstance in favor of the innocence of defendant. It is well settled that an accused is not entitled to any more than was accorded to the instant defendant by the instructions given to the jury by the trial justice. *Trobough* v. *State,* 119 Neb. 128; 65 A.L.R. 1051.

In addition, defendant presses 15 exceptions to the charge

as given by the trial justice to the jury, each exception being to isolated phrases taken, as it were, from context. While each of those exceptions when read singly seems plausible, the charge when read as a whole is not open to successful attack. We have repeatedly held that phrases taken out of context must be considered in the light of the instructions in their entirety. See *Templeton* v. *Bateman*, 90 R. I. 481, 159 A.2d 609.

The defendant particularly presses a contention that since his motion for a direction of not guilty of murder in the first degree had been granted by the court, the general language of the charge to the effect that defendant could be found guilty of murder tended to prejudice the jury and may have contributed to their arriving at the verdict that defendant was guilty of manslaughter. We perceive no merit in this contention. The fact that the jury concluded defendant was guilty of manslaughter clearly precludes any assumption that they were misled by the instructions given them in the charge of the trial justice. All of the exceptions to the charge are without merit and are overruled.

The defendant's final exception is to the denial of his motion for a new trial. It is well settled that the decision of the trial justice on such a motion is entitled to great weight and will not be disturbed unless it is clearly wrong or fails to do justice between the parties. In the instant case the trial justice carefully reviewed the evidence, exercised his independent judgment, commented on the credibility of the witnesses, and in all respects complied with the obligation with which he was confronted in passing on the motion.

He referred to the protracted period of time during which screams were heard by the neighbors and of which no explanation was given by defendant. Further, he commented on statements made by defendant in his explanation as to what occurred which were inconsistent with established facts. The court in great detail credited the testimony of Drs. Paparo, Hindle and Ford and flatly discredited the

testimony of the medical experts for defendant. He summarized the condition of the corpse, the multiple bruises, the broken bones and teeth and the numerous lesions disclosed by the autopsy. Against this he commented on every factor in favor of the defendant and concluded that on all of the evidence the jury was justified in reaching a verdict of manslaughter. We cannot say that he was clearly wrong in thus approving the verdict and denying the defendant's motion for a new trial.

All of the defendant's exceptions are overruled, and the case is remitted to the superior court for further proceedings.

ROBERTS, J., dissenting. Because I am convinced that the action of the trial justice in denying in part the defendant's motion for the direction of a verdict of acquittal constituted reversible error, I am constrained to dissent from the majority opinion in this case and to state my reasons for so doing.

The controlling issue in this case was whether the death of the deceased was induced through a criminal agency for, if on the evidence adduced a jury would be warranted in finding the corpus delicti proved beyond a reasonable doubt, such evidence would submit to no other reasonable hypothesis but that the crime was committed by defendant. However, in my opinion the evidence at the time the motion for a direction was made was insufficient to warrant a finding by the jury that the corpus delicti had been proved beyond a reasonable doubt, and for that reason in my opinion it was error to deny defendant's motion even in part.

When a defendant in a criminal case moves for the direction of a verdict of acquittal, it is well settled that the court must view the evidence in the light most favorable to the state. *State v. Colvin*, 82 R. I. 212. Such a motion challenges the sufficiency of the evidence to raise a jury question. However, a jury has a broad authority to determine questions relating to the credibility and weight to be given

evidence and to draw reasonable inferences therefrom. Therefore, when a trial justice evaluates the evidence on such a motion, he must do so in a manner consistent with the scope of the jury's authority. It is for this reason that a trial court is required on such a motion to give the evidence so challenged full credibility and weight and to draw therefrom any reasonable inferences that are probative of the charges made by the state. *State* v. *Montella,* 88 R. I. 469, 149 A.2d 919.

However, in appropriate circumstances a motion for the direction of a verdict of acquittal may require a determination antecedent to the decision as to the sufficiency of the evidence to raise a jury question as to guilt. Such antecedent issue is whether on the evidence adduced the jury would be warranted in finding that a crime had in fact been committed, and it is my opinion that in the instant case the circumstances are such that the antecedent question is clearly raised by defendant's motion to direct.

This court has recognized that the establishment of the corpus delicti, that is, of the commission of the crime, is antecedent to the question of the criminal agency of the accused in connection with that crime. In *State* v. *Boswell,* 73 R. I. 358, this court said at page 362: "The *corpus delicti* cannot be presumed. A defendant is not required to answer for the alleged commission of a crime in the absence of evidence, direct or circumstantial, sufficient to establish the *corpus delicti,* which expression, according to well-established law, means the body of the crime, that is, the mere commission of a crime irrespective of who may have committed it." The quoted language in my opinion is significant of the antecedent character of the issue as to the corpus delicti in the course of a criminal trial. When in a criminal case the state of the evidence is such that a jury would not be warranted in finding that the crime alleged was in fact committed, a right to be discharged accrues to the accused and properly may be asserted by a mo-

tion for the direction of a verdict of acquittal. When such motion is timely made in these circumstances, its denial constitutes reversible error. *Waide* v. *State,* 13 Okla. Crim. 165.

That the corpus delicti may be proved either by direct or circumstantial evidence and that it must be proved beyond a reasonable doubt is well settled. *State* v. *Boswell, supra.* In that case at page 363 the court said: "It seems unnecessary for us to add that a defendant cannot be convicted unless the *corpus delicti* and defendant's participation in committing the crime are established by the state beyond a reasonable doubt."

For circumstantial evidence to be of sufficient probative force to meet the burden of proof beyond a reasonable doubt, it must have a well-recognized exclusory effect, that is, its probative force is dependent upon the extent to which that evidence excludes reasonable theories that are inconsistent with the ultimate facts sought to be established. Such evidence will be sufficient to sustain the burden of proof of guilt beyond a reasonable doubt when it excludes any reasonable hypethesis or theory concerning the guilt of a defendant that would be inconsistent with his commission of the crime charged. *State* v. *Blood,* 68 R. I. 160; *State* v. *Di Noi,* 59 R. I. 348.

An apt statement of the rule is contained in *Brown* v. *State,* 222 Md. 290, where that court said at page 296: "And, when guilt is based *solely* upon circumstantial evidence, the circumstances, taken together, must be inconsistent with, or such as to exclude, every *reasonable* hypothesis or theory of innocence." It is my opinion that this test for the determination of the probative force of circumstantial evidence is also to be applied in testing the sufficiency of circumstantial evidence to warrant finding the corpus delicti when a motion for a direction is made rather than the usual test on such motions, that is, viewing the evidence in the light most favorable to the state.

224

When the state attempts to establish the corpus delicti beyond a reasonable doubt and relies entirely upon circumstantial evidence, the sufficiency of that evidence to warrant a verdict will depend upon its exclusory character, that is, whether the proven circumstances, taken together, are such as to exclude any hypothesis or theory that would be inconsistent with the perpetration of the crime alleged. *State* v. *Whisler,* 231 Iowa 1216; *Walters* v. *Commonwealth,* 291 Ky. 573; *Hester* v. *State,* 37 Ga. App. 518. A concise and lucid statement of the principle is contained in *Denham* v. *Commonwealth,* 239 Ky. 771, where the Kentucky court said at page 776: "Circumstantial evidence which is as consistent with the absence of a crime as with the perpetration of the crime is insufficient to prove the corpus delicti."

In this case I find inescapable the conclusion that the evidence upon which the state relies for proof of the corpus delicti beyond a reasonable doubt is entirely circumstantial in character. The view of the majority, as I understand it, is that the testimony of the physician who performed the autopsy concerning his expert opinion as to the cause of the asphyxial death partakes of the character of direct evidence on the issue of the corpus delicti and that therefore the case is not one in which the evidence upon which the state relies for proof of the commission of a crime is entirely circumstantial. With this proposition I am unable to agree. The opinion of the medical witness was that the asphyxial death in this case was induced by manual strangulation. The witness reached this conclusion by reason of his observation of the condition of the body during the autopsy and the nature of certain marks and bruises on the body. In other words, the inferences upon which the witness' opinion is based were drawn from evidence in the record which was circumstantial in its character.

Opinion evidence, including that of expert witnesses, is entirely inferential in character. It consists of the infer-

ences of a witness that have been drawn from facts either established or assumed. *In re Estate of Scanlan,* 246 Iowa 52; *Wright* v. *Order of United Commercial Travelers,* 188 Mo. App. 457. Obviously, while such inferences evidence probability with respect to the fact sought to be proved, they do not conclusively demonstrate the existence of such fact. It is for this reason that I take the view that the opinion of an expert witness which is based upon inferences drawn entirely from evidence which is circumstantial in its character partakes of the character of the evidence from which it is drawn. When such an opinion is based upon an inference premised wholly upon circumstantial evidence, I cannot escape the conclusion that the opinion is in itself in the nature of circumstantial evidence.

On defendant's motion for the direction of a verdict of acquittal, therefore, the court was required to test the sufficiency of the circumstantial evidence to warrant the jury's finding proof of a corpus delicti beyond a reasonable doubt on the basis of whether such evidence excludes any reasonable hypothesis or theory that would be inconsistent with a conclusion that the death resulted from a criminal agency. Whether the evidence be consistent with a reasonable hypothesis that the death did result from a criminal agency, if it also be consistent with any reasonable hypothesis or theory that the death resulted from a cause other than a criminal act, the very existence of that alternate hypothesis of death resulting from a noncriminal act creates a reasonable doubt which would preclude the jury from finding that the corpus delicti had been proved beyond a reasonable doubt.

I do not contend that in the instant case when all of the circumstances are taken together they will not support a reasonable hypothesis that the deceased died as the result of a criminal act. I am convinced, however, that this evidence, taken as a whole, will support also a reasonable hypothesis that the death of the deceased was not the result

of a criminal agency, for, without unduly extending this dissenting opinion by a detailed discussion of the evidence, it is in my opinion susceptible of a reasonable inference that the death of the deceased resulted from a cause other than one criminal in nature. That being so, the circumstantial evidence must be held to be insufficient to warrant the jury in finding that the corpus delicti had been proved beyond a reasonable doubt. For this reason I believe that it was reversible error to have denied in part the defendant's motion for a direction of a verdict of acquittal and that his exception thereto should have been sustained.

ON MOTION FOR REARGUMENT.

OCTOBER 2, 1961.

PER CURIAM. After our decision in the above case the defendant asked for and received permission to file a motion for reargument. Pursuant thereto he has filed such a motion, setting out therein certain reasons on which he bases his contention that justice requires a reargument of the case. We have carefully considered those reasons and we are of the opinion that they are without merit.

The defendant stresses a secondary argument that we failed to consider his exception to the admission into evidence of the autopsy report which he alleges was inadmissible as being contrary to the provisions of G. L. 1956, chap. 23-4. It is his contention that the doctor performing the autopsy was not the chief medical examiner as required by that chapter. He fails to recognize the provision for temporary expert assistance set forth in §23-4-6 therein. Indeed, the record establishes that Dr. Gary P. Paparo was competent, qualified and authorized within the meaning of the applicable statute. This was implied in our decision and we now so expressly state.

Motion denied.

*J. Joseph Nugent,* Attorney General, *Corinne P. Grande,* Special Counsel for State.

*Maxwell W. Waldman, Aram A. Arabian,* for defendant.