**STATE of Maine**

v.

**David BAHRE and Frederick H. Lax, III.**

Supreme Judicial Court of Maine.

Argued Sept. 21, 1982.

Decided Feb. 23, 1983.

Gene Libby, Dist. Atty., Michael E. Saucier (orally), Asst. Dist. Atty., Alfred, for plaintiff.

Cloutier, Woodman & Cloutier, James F. Cloutier (orally), Portland, for Bahre.

Stanley Greenberg (orally), Portland, for Lax.

Before GODFREY, NICHOLS, ROBERTS, CARTER, VIOLETTE and WATHEN, JJ., and DUFRESNE, A.R.J.

DUFRESNE, Active Retired Justice.

The defendants appeal from their convictions, following a jury trial in Superior Court, York County, of aggravated assault pursuant to 17–A M.R.S.A. § 208. Each advances several points of error allegedly requiring reversal. Defendant Lax complains that the Superior Court committed prejudicial error by 1) permitting the State in rebuttal to argue a concurrent causation theory to the jury without giving any guidance whatsoever thereon for the jury to use in its deliberations, although requested by the State to do so; 2) inadequately instructing the jury on the lesser included offense of simple assault; 3) erroneously instructing the jury on the use of the character evidence submitted by Lax; 4) denying his discovery motion to obtain summaries of the District Attorney's notes of interviews with witnesses; and 5) failing to afford to his counsel an opportunity to object to the Court's charge out of the presence of the jury. Defendant Bahre alleges as prejudicial error that 1) the Superior Court denied his request for jury instructions regarding accomplice liability, while permitting the State to argue a concurrent causation theory to the jury; 2) the Court refused to permit Bahre's counsel to conduct *voir dire* prior to its determination of the admissibility of Defendant Lax's prior convictions; and 3) the Court rejected his request for jury instructions on the issue of motive. Defendant Bahre also argues that the evidence was insufficient to justify his conviction of aggravated assault. We sustain both appeals.

## Factual Background

On the evening of May 24, 1981, Defendants Lax and Bahre were "bar-hopping" with one Gary Gay at Old Orchard Beach. Around 1:00 a.m. on May 25, 1981, the three were purportedly walking on West Grand Avenue going in the direction of Lax's parked car, with Gay and Bahre side-by-side and Lax several steps in front of them.

On the same evening, one William Rosenstock had also been drinking at several bars in Old Orchard Beach. Probably because he had had too much to drink, Rosenstock remembered, so he testified, that he tripped on a curb and fell as he attempted to mount the sidewalk on the corner of the Round-Up, telling an inquiring passerby: "I'm okay."

The two defendants and their companion Gay maintained at trial that for no apparent reason Rosenstock jumped Lax. As they remember it, a struggle ensued. Both Lax and Rosenstock tumbled to the ground, exchanging blows until the police arrived. Bahre asserts that, as he attempted to "break up the fight", someone grabbed his leg and he struggled free and left the immediate area. According to the defendants and their friend Gay, Rosenstock was conscious and striking blows to Lax's body at all times.

Rosenstock, however, testified that he does not recall what happened from the time he tripped on the curb until his arrival at Webber Hospital some time later.

One Richard Smith, owner of Smith's Arcade and a stranger to all participants prior to the incident in question, testified as a prosecution witness that he observed the fight soon after it began. Smith said that Lax grabbed Rosenstock by his lapels, slammed him against a wall, and then threw him to the cement sidewalk, Lax remaining astride the inert Rosenstock when the defendant Bahre kicked Mr. Rosenstock in the head. One Jamie Keer, an acquaintance, so Smith stated, broke up the fight by pulling Lax off Rosenstock and restraining him until the police arrived. In describing the incident, Smith was positive that Rosenstock never offered any resistance and that his arms were at his sides or outstretched at all times.

One Sargeant Chelatte of the Old Orchard Beach police department testified that, as he approached the scene, he saw Lax strike Rosenstock repeatedly with a closed fist while on top of him on the sidewalk. He also said that Rosenstock offered no resistance and appeared unconscious. On checking Rosenstock, the officer observed that he was bleeding quite profusely from the mouth and the side of his face. Shortly thereafter, Officer Charles Granger, the emergency medical technician attached to the department, examined Rosenstock as he lay on his back on the sidewalk and noticed that he was having difficulty breathing. He hyperextended Rosenstock's neck and tilted his head to the side so that some of the blood would drain off and ease the person's breathing.

Shortly after the police were at the site of the fray, emergency medical personnel arrived and ministered to Rosenstock. There was testimony that Rosenstock was indeed unconscious at this point, was bleeding profusely from the face and mouth, was unable to clear his own airway due to his unconscious state, and as a result was choking on his own blood. First aid was undertaken to clear Rosenstock's airway, and, had this not been done, Rosenstock probably would have suffocated, so it was stated.

As a result of his encounter with the defendants, Rosenstock sustained a one inch cut on his lip, requiring five stitches to close and subsequent remedial surgery; a two and one half inch cut behind his ear, requiring eight stitches to close; and injury to his teeth, requiring ongoing care of an orthodontist and restricting his eating habits.

### Points of appeal. Defendant Lax

1

#### Concurrent causation

Lax complains that the Superior Court Justice wrongly permitted the prosecutor to argue a "concurrent causation" theory to

the jury in his closing argument.[1] Lax charges that the prosecutor misstated the law on concurrent causation,[2] and that this misstatement, combined with the trial justice's refusal to instruct the jury on concurrent causation, as requested by the State, resulted in an erroneous understanding of the law of concurrent causation on the part of the jury. Lax claims that this resulted in prejudicial error, because the jury may have convicted him solely on a "concurrent causation" theory because of their misunderstanding of the law. We agree.

 Lax's attorney did object to the misstatement at the time of the ·prosecutor's argument on concurrent causation. This ordinarily would preserve the alleged error for review. However, Lax neither dissented from the trial justice's refusal to give the State's requested instruction on concurrent causation, nor does he argue to this Court that the trial justice should have done so.[3] Cf. State v. Bazinet, 372 A.2d 1036, 1040 (Me.1977) and State v. Hazelton, 330 A.2d 919, 922 (Me.1975). Notwithstanding counsel's position in the matter, in order to maintain the basic integrity of judicial proceedings, we will notice error, if error

there be, that works substantial injustice, whether or not it is brought to the attention of the trial or appellate court. M.R. Crim.P. 52(b);[4] State v. Rancourt, 435 A.2d 1095, 1102 (Me.1981); State v. ·Furrow, 424 A.2d 694, 696 (Me.1981). The rule may be called into play, even in the face of affirmative opposition on the part of counsel for the aggrieved accused, in order to avoid depriving the defendant of his constitutional right to a fundamentally fair trial and thus prevent a miscarriage of justice. Cf. State v. Nason, 383 A.2d 35, 36 (Me.1978).

 Where the question of a fair and impartial trial is in the balance, be it by reason of improper argument of counsel so highly prejudicial as to inevitably result in injustice or because the instructions are lacking in jury guidance on points so vital to the proper resolution of the issues involved as to otherwise cause verdicts based upon a misconception of the law or on arbitrary guesswork, this Court, as in the case of erroneous instructions where no objection is taken, will and should go beyond the legal technicalities that may be required under other circumstances, so that the ac-

1. The District Attorney made the following statement in his closing argument to the jury:

I think there is something going on here that I'd like to draw to your attention. Did you get the sense during either or both of the closing arguments that [counsel for Bahre] is standing over here pointing at Fred [Lax] and that [counsel for Lax] is standing over here pointing at David [Bahre]? Did you get that kind of a feeling or did you get that feeling when [counsel for Lax] was saying the State can't prove to you whether Mr. Lax caused the chipped tooth; the State can't prove to you whether Mr. Lax caused the split lip; the State can't prove to you whether or not those were caused by the kick? You know what I've got to say to that? So what? The State doesn't have to prove and you don't have to find what injuries this man caused or this man caused. All you have to find is that Mr. Rosenstock suffered serious bodily injury and that injury was caused by Mr. Lax in combination with Mr. Bahre period end quote. (Emphasis added).

2. 17–A M.R.S.A. § 33 provides as follows:

§ 33 Result as an element [of crime]; causation

Unless otherwise provided, when causing a result is an element of a crime, causation may be found where the result would not have occurred but for the conduct of the defendant operating either alone or concurrently with another cause, unless the concurrent cause was clearly sufficient to produce the result and the conduct of the defendant was clearly insufficient.

The prosecutor's requested instruction was couched in near-literal statutory language.

3. Defendant Lax contends that 17–A M.R.S.A. § 33 could not form the basis of a jury instruction in his case, because the statute did not become effective until September 18, 1981, and the alleged crime in question here occurred on May 25, 1981. However, Section 33 is identical to the former 17–A M.R.S.A. § 56, which was in effect at the time of the occurrence. The provision was merely changed to a different location in the statutes.

4. M.R.Crim.P. 52(b) reads:

(b) Obvious Error. Obvious errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.

cused may be assured of that impartial trial which the Constitution guarantees to him. *See State v. Smith,* 140 Me. 255, 285, 37 A.2d 246, 259 (1944); *State v. Dipietrantonio,* 152 Me. 41, 48, 122 A.2d 414, 418 (1956). A verdict based on a misconception of the law is against the law, and to allow it to stand is not justice. *State v. Wright,* 128 Me. 404, 407, 148 A. 141 (1929).

█ The prosecutor's closing argument was a patently incomplete statement of the law on concurrent causation. It completely ignored the possibility that the jury might find that Defendant Bahre did kick the victim Rosenstock in the head, and that the kick was clearly sufficient to cause the injuries which constitute aggravated assault, while the blows struck by Lax were clearly insufficient. See 17–A M.R.S.A. § 33. There was testimony that Lax struck Rosenstock only in the face, and that Bahre kicked the victim in the head with great force. Since the jury never received correct instructions on the relevant law from the presiding justice, they may well have found Defendant Lax guilty on just such reasoning as the prosecutor's argument suggested. That is obvious error, as envisioned by Rule 52(b), compelling reversal. The standard for determining manifest or obvious error is whether there exists a "reasonable possibility" that a complete and adequate instruction would have resulted in a different verdict. *State v. McDonough,* 350 A.2d 556, 564 (Me.1976); *State v. McKeough,* 300 A.2d 755, 761 (Me.1973). We are satisfied that such is the case here.

█ In *United States v. Bagby,* 451 F.2d 920 (9th Cir.1971), as in the instant case, the defendant at trial had predicated his objection to a particular instruction on a different ground than that raised on appeal and had objected to the giving of further instructions to the jury, yet the court found the instructions as given so confusing and so clearly erroneous as to amount to plain or obvious error under Rule 52(b) and overlooked the absence of timely objection on the part of the defendant. A conviction should not rest on ambiguous and equivocal instructions to the jury on a basic issue. *Bollenbach v. United States,* 326 U.S. 607, 613, 66 S.Ct. 402, 405, 90 L.Ed. 350 (1946). Where the jury may have been confused as to the requirement of proof respecting the individual guilt of the codefendants inter se due to the prosecutor's concurrent causation argument to the jury in his closing address without further court clarification in the ensuing instructions, the charge itself, as given, was prejudicial for inadequacy in relation to an essential element of the crime charged. *See State v. Sapiel,* 432 A.2d 1262 (Me.1981); *State v. Perry,* 408 A.2d 1300 (Me.1979).

### 2
### *Lesser included offense*

█ The presiding justice charged the jury on accomplice criminal liability in the general terms of the statute without pinpointing its applicability in relation to any time sequence concerning the individual conduct of the respective defendants, nor in connection with the nature of the injuries, serious or otherwise. P.L.1975, Ch. 499, § 57 (now 17–A, § 57). On the theory that there was no evidence to the effect that he could be criminally accountable as Bahre's accomplice, Lax requested the following instruction, pursuant to 17–A, § 33, to cause the jury to individualize the respective conduct of the codefendants in their assessment of individual guilt under all the circumstances of the case including any possible accomplice responsibility:

If you find beyond a reasonable doubt that the injuries to Mr. Rosenstock are not "serious" as that term is used in the statute defining aggravated assault, then you may consider whether the State has proved beyond a reasonable doubt the elements of the crime of [simple] assault. OR,

if you find that certain of the injuries to Mr. Rosenstock were serious, and that Mr. Lax caused some injury to Mr. Rosenstock, but that the State has not proved beyond a reasonable doubt that the injury caused solely by Mr. Lax included any of

the serious injuries, then you may consider whether the State has proved beyond a reasonable doubt the elements of the crime of [simple] assault.

The trial justice did inform the jury that their deliberations "will be individually, separately, for each defendant," that "each defendant is to be considered and judged by you separately." This general instruction requiring the jury to determine the codefendants' guilt on an individual and separate basis did nothing to keep the jury from convicting the defendant Lax of aggravated assault on a concurrent causation theory, as argued by the prosecutor in his closing argument, even though the jury found that Lax was not Bahre's accomplice. The failure to instruct the jury properly on concurrent causation, especially in connection with the mere general instruction on accomplice criminal liability, deprived the defendant Lax of an adequate instruction on the lesser included offense of simple assault to which Lax was entitled.

 In order for the criminal justice system to attain just and efficient results through the medium of a jury, it is mandatory on the part of a trial judge that in his charge to the jury he inform them in clear and concise terms as to the law which is applicable to the particular facts in issue which the evidence tends to prove. He must instruct the jury as to the fundamental principles of law which control the case. And, it is insufficient merely to give the jury general and abstract propositions of law, which may be correct in themselves but, without further explanation as to their application to the particular facts of the case, leave the jury to speculate as to how they should be applied in determining guilt or innocence in the factual scenario presented by the evidence. *See State v. Childs,* 388 A.2d 76, 80 (Me.1978); *State v. Tibbetts,* 379 A.2d 735, 737 (Me.1977); *State v. Benson,* 155 Me. 115, 122, 151 A.2d 266, 270 (1959). The jury in this case was not specif-

ically instructed respecting the theory of the defense. When, as here, that theory is rationally supported in the evidence, failure to present it to the jury constituted obvious reversible error. *State v. Rand,* 430 A.2d 808, 815 (Me.1981); *State v. Rowe,* 453 A.2d 134 (Me.1982).

### 3
### *Character evidence*

 At trial, the defendant Lax called the personnel manager and the plant manager of the Reece Corporation to testify respecting Lax's reputation for nonaggressiveness in Lax's work environment with that corporate employer. Both vouched for Lax's good reputation for nonaggressiveness at the work place, and both indicated that knowledge of Lax's conviction of burglary and theft in Cumberland County on May 25, 1979 would not affect their opinion thereon. Lax sought an instruction to the jury that such evidence may be considered by them on both issues, 1) whether the State has proved beyond a reasonable doubt that Lax committed each element of the crime of assault, whether aggravated or simple, and 2) whether the State has negated the issue of self-defense beyond a reasonable doubt. Assuming, but not deciding, that the reference character evidence was properly admitted,[5] we need not decide the propriety of such a proposed instruction, as the issue may not necessarily come up again on retrial. We note, however, that the presiding justice gave the following curt instruction thereon:

You had witnesses concerning character of the defendants (sic) [no character witnesses were presented by the defendant Bahre]. You can utilize that *or disregard it as you see fit.* It's there available to you. (Emphasis supplied).

In the instant case, where the defendants were tried jointly and their respective liability for the serious injuries suffered by Mr. Rosenstock was in substantial conflict

5. This Court has passed upon the admissibility and method of proof of character evidence in the cases of *State v. Doherty,* 437 A.2d 876 (Me.1981) and *State v. Wells,* 423 A.2d 221 (Me.1980).

and the State's evidence, medical or otherwise, was minimal concerning the specific injuries caused by the individual defendants, the court's instruction to the jury that they could disregard the character evidence as they saw fit was plain error affecting the substantial rights of the defendant Lax. There is a difference between the jury weighing and rejecting a witness's testimony on the one hand, and disregarding it completely. The word "disregard" in common acceptance means to pay no heed to, in other words, implies in this context that the jury may ignore the testimony of that witness, especially when the jury are told that they may do so "as they see fit." To the contrary, the jurors are in fact dutybound to consider all the evidence and upon consideration assign to it the weight they find it has under all the circumstances of the case. *State v. Willard,* 346 Mo. 773, 142 S.W.2d 1046, 1052 (1940); *see also People v. Monasterski,* 105 Mich.App. 645, 307 N.W.2d 394, 400 (1981).

The defendant Lax has argued his other stated points on appeal, but since we have concluded that a new trial is required because of errors of commission and omission in the charge given, we need not consider these additional claims of error which are not likely to recur on a new trial.

### *Points of appeal. Defendant Bahre*

1

### *Concurrent causation*

At trial, counsel for the defendant Bahre objected to an instruction on concurrent causation which the State requested pursuant to 17–A § 33.[6] He had, however, joined in the objection by Lax to the prosecutor's alleged misstatement of the law in the State's rebuttal argument to the jury. This defendant's position was that a proper instruction on accomplice criminal liability, in terms of factual application to the possible varied evidentiary nuances which the jury might conclude from the evidence, instead of the mere submission of the general abstract statutory language, would provide the jury with the necessary information to adjudge Bahre's responsibility in the incident according to law. His requested instruction in more specific application to the facts of the case was refused. As in the case of the defendant Lax, we find that the combination of the prosecutor's erroneous inadequate statement of the law on concurrent causation and the presiding justice's failure to instruct the jury properly on the law in this aspect of the case resulted in obvious prejudicial error. The court's ruling against the State on its request of a specific instruction on concurrent causation in the terms of the statute (17–A § 33) would indicate in all probability that a similar request from Bahre would have been equally fruitless. *See United States v. Lefkowitz,* 284 F.2d 310 (2nd Cir.1960), at p. 313, note 1; *United States v. Bagby,* 451 F.2d 920, 927 (9th Cir.1971). Absent the prosecutor's inadequate and misleading statement of the law in closing argument, with which the jurors were left in their deliberations with the court's apparent approval, they might have found that Bahre's kick to the victim's head was clearly insufficient to cause the injuries which were the basis of the charge of aggravated assault and that Lax's blows to the victim's face were clearly sufficient to cause such injuries. The jury, if properly instructed, could have found from the testimony that Lax's blows resulted in both bleeding in the mouth and unconsciousness, which gave rise to the danger of choking, and that Bahre's kick to the head was no factor in those injuries. But for their erroneous impression of the law respecting concurrent causation, the jurors might not have found Bahre guilty of aggravated assault, if they did not find him criminally liable as Lax's accomplice.

2

### *Motive*

The defendant Bahre timely requested that the following instruction be given the jury:

---

**6.** *See* note 2, *supra,* respecting the causing of a result as an element of a crime.

When the evidence fails to show, on the part of the accused, any motive to commit a crime, such lack of motive is a circumstance in favor of the innocence of the party accused, and in this case, if the jury finds, upon a careful examination of all of the evidence, that it fails to show any motive on the part [of] a defendant to commit the crime charged in the indictment, then such failure to show motive should be considered by the jury as a circumstance in favor of that defendant.

The presiding justice refused, but instructed the jury on the matter of motive in the following manner:

You have heard during the course of the trial evidence on the question of the motive of the Defendants. Motive is not an element of the crime of either aggravated assault or assault, and therefore, the State does not need to prove that either crime was committed with a motive; but that is a circumstance that you can consider in your deliberations.

There was no error.

▆▆▆ We are aware that the New Mexico Court, in *State v. Vigil,* 87 N.M. 345, 533 P.2d 578 (1975), ruled that, where the evidence indicates a complete lack of motive on the part of the defendant and the evidence in the record is completely circumstantial, it was incumbent on the trial judge to present an instruction on motive similar to that requested by the defendant here. To the same effect, *see Trobough v. State,* 119 Neb. 128, 134–35, 227 N.W. 443, 445 (1929). We believe, however, that the better rule is the one followed by other jurisdictions which do not favor such special instruction as requested by Bahre in the instant case. Their reasoning is based on the fact that the State is not required to prove a motive for crime, and, where a motive for the crime charged is not proven or shown by the evidence, it does not follow that such absence of motive raises a reasonable doubt respecting the guilt or innocence of the defendant. A person is not to be acquitted of crime simply because his motive for perpetrating it cannot be discover-

ed. *See Griffin v. State,* 79 Okl.Cr. 85, 151 P.2d 812, 815–16, (1944); *State v. Cor,* 144 Mont. 323, 396 P.2d 86, 97 (1964); *People v. Dore,* 339 Ill. 415, 171 N.E. 554 (1930).

▆▆▆ Motive is a material circumstance that a jury may take into consideration in a case of circumstantial evidence. It is a proper matter for argument before the jury. Absence of motive, however, does not prove innocence, nor does the mere fact that it exists establish guilt. It is a circumstance which the jury should weigh with all the other facts and circumstances in evidence. From the fact that absence or presence of motive is a relevant and material circumstance before the jury, it does not follow that a defendant is entitled to a special instruction thereon.

▆▆▆ Traditionally, motive is not an element of a substantive criminal offense. *State v. Snow,* 383 A.2d 1385, 1388 (Me. 1978); *State v. Merry,* 136 Me. 243, 248, 8 A.2d 143, 146–47 (1939). As stated in *State v. Ward,* 119 Me. 482, 493, 111 A. 805 (1921):

[M]otive is only one element in the chain of evidence offered for the purpose of proving the commission of a crime. It is not an essential element. A powerful motive may be found upon all the evidence to be inconsistent with guilt. On the other hand there may be ample proof of guilt without any evidence of motive. It is often impossible to prove motive. If the other evidence is sufficient, motive becomes immaterial.

The defendant Bahre has argued other points of alleged reversible error, but, since we have concluded that a new trial is required because of error in the charge given, we do not reach these additional claims of error.

The entry will be:

The judgment of conviction of the Superior Court respecting each defendant is vacated. Case remanded to the Superior Court for a new trial.

All concurring.