## STATE OF OREGON *v.* ENGLISH

378 P. 2d 997

*Millard M. Becker,* Portland, argued the cause and filed briefs for appellant.

*David Robinson, Jr.,* Deputy District Attorney, Portland, argued the cause for respondent. On the brief were Chester W. Pecore, District Attorney, Portland, and Oscar D. Howlett, Deputy District Attorney, Portland.

Before MCALLISTER, Chief Justice, and ROSSMAN, SLOAN, GOODWIN and LUSK, Justices.

SLOAN, J.

Defendant was convicted by a jury of the crime of involuntary manslaughter and appeals from the judgment entered on the verdict. Defendant had been charged in an indictment with first degree murder for the fatal shooting of his mother.

Defendant, who was 18 years old at the time, lived with his mother and a younger sister in a house in northeast Portland. On two occasions, prior to the night of the shooting, this family had complained to the police that burglars had entered their home and, on one occasion, had stolen the mother's purse. As a result of these incidents defendant kept a loaded .22 caliber pistol in his room.

In the early morning hours of April 10, 1961, so defendant testified, his mother aroused him because she thought she had heard someone in the house. Defendant took his gun from under a pillow and searched the house. No one was found. He swore that when he completed his search he found his mother reclining on a sofa in the living room of the house. He said that his approach to the living room brought him to the back of the sofa. He testified that he stood over his mother for a few moments and engaged in conversation; that for some cause unknown to him and while talking to his mother the gun was discharged. The

bullet entered the mother's forehead causing a wound which resulted in her death.

Following the events described defendant was taken to police headquarters where he was questioned almost continuously from about 5 a.m., until about 5:30 p.m., of the same day. Early in the day he was visited by a relative who is a prominent lawyer in Portland. It is not clear in the record what advice defendant received from the lawyer-relative. Beginning about 4:30 p.m., on April 10, defendant gave a statement to one of the police detectives. The statement was in the form of questions and answers taken and transcribed by a court reporter. In that statement defendant said he had been teasing his mother by pointing at her with the gun at the time of discharge. There were other discrepancies between this last statement and ones made earlier the same day. His testimony at the trial was as before stated.

■ Three assignments claim error for the admission of the statement made by defendant to the detective for the reason that it was not freely and voluntarily made. The assignments cannot be sustained. The trial court properly submitted the statement to the jury with instructions informing the jury of its duty in this regard. There was no evidence that the statements were induced by coercion or promises or were other than voluntary. The problems presented by these assignments have recently been re-examined and need not again be repeated. *State v. Ellis,* 1962, 232 Or 70, 374 P2d 461; *State v. Freeman,* 1962, 232 Or 453, 374 P2d 453.

■ Defendant next complains of the admission of a photograph of the head and shoulders of the deceased mother. No error was committed by the receipt of the evidence. *State v. Freeman,* supra.

■ Another assignment says a mistrial should have been granted for improper remarks of the prosecutor. The prosecutor's violation of oft-repeated rules was promptly and emphatically cured by the court's instructions to the jury.

■ Two assignments are directed at instructions given and not excepted to. Hence they will not be reviewed here. *State v. Sanders,* 1962, 232 Or 631, 376 P2d 668.

■ Lastly, error is asserted because the court refused to withdraw the charge of first degree murder. It is conceded here that there was no believable evidence of premeditation. However, the error, if any, was cured by the verdict of involuntary manslaughter. *State v. Reyes,* 1957, 209 Or 595, 619, 303 P2d 519, 304 P2d 446, 308 P2d 182, follows the rule which appears to prevail:

> "The asserted errors in these rulings, insofar as they pertain to first degree murder, need not be considered, since the effect of the verdict of guilty of second degree murder was to acquit the defendant of the higher crime and 'he was therefore not prejudiced by any ruling made on that subject.' State v. Meyers, 57 Or 50, 57, 110 P 407, 33 LRS (ns) 143."

The authority in regard to rule stated is in general accord. *State v. Carabajal,* 1920, 26 NM 384, 193 P 406, 17 ALR 1098; 4 Warren, Homicide, (1938) § 380, 637, et seq; 2 Michie, Homicide, (1914), § 340 (4) et seq, 1827; 26 Am Jur, Homicide, (1940) § 557, 546; *Tate v. People,* 1952, 125 Colo 527, 247 P2d 665, 673, where the Supreme Court of Colorado appears to modify or overrule an earlier case of *Ryan v. People,* 1911, 50 Colo 99, 114 P 306, Ann Cas 1912 B, 1232, which the editors of Am Jur cite and rely on

for the rule stated at the cited reference to Am Jur. However, in *Walker v. People,* decided less than three months later, 1952, 126 Colo 135, 248 P2d 287, 299, the Colorado court again cited and fully relied on *Ryan v. People* without reference to the Tate case.

We think a showing of prejudice should be apparent before a court should deviate from the rule in a given case. Here, it is clear that defendant was not prejudiced. His testimony was sufficient to have sustained the verdict.

There was no error in the trial. The judgment is affirmed.