614 P.2d 332

**STATE of Arizona, Appellee,**

v.

**Mark Daniel MOORE, Appellant.**

**No. 1 CA–CR 3978.**

Court of Appeals of Arizona,
Division 1,
Department C.

May 22, 1980.

Rehearing Denied July 2, 1980.

Review Denied July 15, 1980.

Robert K. Corbin, Atty. Gen., by William J. Schafer, III, Chief Counsel, Criminal Division and Dennis C. Freeman, Asst. Attys. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender by Joel M. Glynn, Deputy Public Defender, Phoenix, for appellant.

OPINION

HAIRE, Judge.

Pursuant to a written plea agreement, defendant pled guilty to three counts of armed robbery and no contest to one count of sexual assault. He was sentenced to imprisonment for concurrent terms of 15 years on each count. He urges on appeal that there was an insufficient factual basis to support his guilty pleas to the three counts of armed robbery. We agree, and therefore set aside the judgments of conviction and sentences on all counts, and remand for further proceedings.[1]

1. A separate charge of robbery involving defendant (Maricopa Cause No. CR–104692) was the subject of the same plea hearing proceedings in the superior court, but was not the subject of the same plea agreement. As a result of defendant's guilty plea to that charge,

Since all of the counts in this case involved activities occurring after October 1, 1978, the resolution of the questions urged on appeal are governed by Arizona's new criminal code. As indicated, three of defendant's pleas of guilty were to robbery while armed with a gun, in violation of A.R.S. § 13–1904.[2] The essence of defendant's contention is that there is an insufficient factual basis to support a plea of guilty to the armed robbery counts because the plea hearing record shows that as to Count II, he merely pretended to have a gun, and on Counts IV and V, all he had was a toy cap pistol.

Before proceeding to a discussion of the factual record, we note that under Arizona's new criminal code the crime of robbery is broken down into three categories of ascending seriousness. The first, and least serious classification, is referred to in A.R.S. § 13–1902 simply as "robbery", and is classified as a class 4 felony. A.R.S. § 13–1902 A sets forth the basic definition of the crime of robbery, and constitutes the foundation upon which the two more serious crimes of robbery are based.[3]

The second, and in terms of seriousness, the intermediate classification, is aggravated robbery, set forth in A.R.S. § 13–1903 A. A person commits aggravated robbery "if in the course of committing robbery as defined in § 13–1902, such person is aided by one or more accomplices actually present." Aggravated robbery is a class 3 felony.

The third, and most serious classification, armed robbery, is defined in A.R.S. § 13–1904 A.[4] Armed robbery constitutes a class 2 felony. In order to sustain an armed robbery conviction the facts must show that the defendant or an accomplice was (1) armed with a deadly weapon,[5] or (2) used or threatened to use a deadly weapon or dangerous instrument[6] in the course of committing the robbery.

Our initial inquiry is whether, accepting defendant's claim that on Count II he had

---

he was sentenced to 14 to 15 years imprisonment. Defendant's appeal from that conviction and sentence did not involve the issues presented on this appeal, and the judgment and sentence has been affirmed in this Court's memorandum decision, *State v. Moore*, 1 CA-CR 3979 (August 9, 1979).

2. The operative language in each armed robbery count of the indictment insofar as pertinent to the issues raised on appeal was identical, except as to the name of the victim and date of occurrence, as follows:
"[W]hile [defendant] was armed with a deadly weapon or used or threatened to use a deadly weapon or dangerous instrument, to-wit: a gun, in violation of A.R.S. Sec. 13–1901, 13–1902, 13–1904, 13–701, 13–702 and 13–801."

3. A.R.S. § 13–1902 A provides as follows:
"A. A person commits robbery if in the course of taking any property of another from his person or immediate presence and against his will, such person threatens or uses force against any person with intent either to coerce surrender of property or to prevent resistance to such person taking or retaining property."

4. A.R.S. § 13–1904 provides as follows:
"§ 13–1904. Armed robbery; classification
"A. A person commits armed robbery if in the course of committing robbery as defined in § 13–1902, such person or an accomplice:

"1. Is armed with a deadly weapon; or
"2. Uses or threatens to use a deadly weapon or dangerous instrument.
"B. For the purposes of this chapter, exhibition in the course of committing armed robbery of an article fashioned or used in a manner to lead any reasonable person to believe it to be deadly or dangerous is presumed evidence of its deadly or dangerous character.
"C. Armed robbery is a class 2 felony."

5. A.R.S. § 13–105(9) provides as follows:
"9. 'Deadly weapon' means anything designed for lethal use. The term includes a firearm." "Firearm" is defined in § 13–105(12), as follows:
"12. 'Firearm' means any loaded or unloaded pistol, revolver, rifle, shotgun or other weapon which will or is designed to or may readily be converted to expel a projectile by the action of expanding gases, except that it does not include a firearm in permanently inoperable condition."

6. A.R.S. § 13–105(7) provides as follows:
"7. 'Dangerous instrument' means anything that under the circumstances in which it is used, attempted to be used or threatened to be used is readily capable of causing death or serious physical injury."

no weapon, but merely pretended that he had a gun, and, on Counts IV and V, that he used a toy cap pistol, such accepted facts would support a violation of A.R.S. § 13–1904. We hold that they would not, *if such facts are accepted by the trier of fact as true.*

In arriving at this conclusion we note that the Arizona Criminal Code Commission, in its proposed Arizona Revised Criminal Code, 1975, recommended essentially the same three-tiered robbery classification scheme as that which was subsequently enacted by the legislature. There was an important departure, however, insofar as concerns the crime of aggravated robbery. The Code Commission's aggravated robbery recommendation would have included as a second aggravating circumstance within the definition of aggravated robbery, a robbery committed by a person representing "by word or gesture that he or she or an accomplice is armed with a deadly weapon or dangerous instrument." [7] In its commentary, the Code Commission stated:

> "The second aggravating circumstance in § 1902(a)(2) covers two forms of dangerous conduct: the representation of a nonpresent deadly weapon or instrument, as defined in §§ 1900(c) and 1900(d), or the exhibition of a dummy weapon. Both merit more severe treatment because of the greater recourse to violence." Arizona Criminal Code Commission, Proposed Arizona Revised Criminal Code 188 (1975).

Clearly defendant's conduct would have fallen within this definition, but for some reason the legislature did not see fit to enact this provision so as to raise defendant's conduct from simple robbery to the more serious classification of aggravated robbery.

Against this background, we consider now whether there is any possibility that by refusing to bring defendant's conduct within the classification of aggravated robbery, the legislature evidenced an intent that the conduct would be punishable as armed robbery under A.R.S. § 13–1904.

We note that the armed robbery statute, as enacted by the legislature, is for all practical purposes identical to the Code Commission's proposal on armed robbery, § 1903. Referring to the Code Commission's commentary we find the following:

> "The effect of clarifications (1) and (2) immediately above is to relegate robberies involving asserted but nonpresent weapons to § 1902 [aggravated robbery]."

> \*   \*   \*   \*   \*   \*

> "The vexing problem of unloaded, unworkable or fake weapons is treated by means of the presumption taken from Michigan Revised Criminal Code (proposed), § 3305 and stated in § 1903(b). The effect of the presumption is to treat such items as deadly as they appear to be *until proved otherwise.*" (Emphasis added). Id. at 189.

While there may be some question as to the evidentiary impact of the presumption created by A.R.S. § 13–1904 B,[8] one point is clear. There would be no need for this evidentiary presumption if the mere use of

---

7. The Criminal Code Commission's recommendation was as follows:

"1902 Aggravated Robbery

"(a) *Offense*: a person commits aggravated robbery if in the course of committing robbery as defined in section 1901, he or she:

    (1) is aided by one or more accomplices actually present; or

    (2) represents by word or gesture that he or she or an accomplice is armed with a deadly weapon or dangerous instrument.

"(b) *Grading*: aggravated robbery is a [Class 2 felony]."

Arizona Criminal Code Commission, Proposed Arizona Revised Criminal Code 186 (1975).

8. Gerber, in his "Explanation" of this provision states:

"The effect of the presumption is to treat such items as deadly as they appear to be until proven otherwise." R. Gerber, *Criminal Law of Arizona* 275 (1978).

In Gerber's "Comment", he adds:

"The evidentiary impact of the presumption in subsection (B) is nowhere defined in the Code. It is conceivable that it merely shifts the burden of going forward with the evidence to the defendant. Presumably this presumption could also act as a jury instruction where the character of the weapon is at issue. *See Udall, Arizona Law of Evidence* § 191 at 416 (1960)." Id. at 276.

a fake weapon in and of itself constituted conduct falling within the parameters of the statutory definition of armed robbery. The obvious purpose of the evidentiary presumption is to aid the state in establishing that the weapon was not fake. If both parties agree that the purported deadly weapon was fake, then the presumption becomes immaterial, and the conduct falls under A.R.S. § 13–1902, not A.R.S. § 13–1904.

In response to the insufficient factual basis argument the state points out that the trial judge could have found an adequate factual basis from the extended trial court record, since all three victims reported that they had been robbed at gunpoint. If the three robbery pleas had been *Alford* pleas,[9] the state's argument might have some merit. However, such was not the case. From a review of the plea and sentencing hearing it is apparent that the trial judge (and apparently both attorneys) simply misunderstood the law and assumed that defendant could be found guilty of armed robbery based upon his own version of the facts. Likewise, it is clear that the defendant entered his pleas assuming that his admitted conduct constituted the crime of armed robbery. As we have indicated, if defendant's version is accepted as true, the crime of armed robbery was not committed. Thus not only was the factual basis assumed by the trial judge insufficient, in addition defendant's pleas cannot be considered to have been intelligently given in the absence of advice to him that his purported conduct could not constitute the charged crime.

Defendant has raised other issues, particularly relating to the propriety of the sentences imposed on the armed robbery convictions. If these issues become pertinent in future proceedings in this case, the attention of the court and counsel is directed to the following opinions: *State v. Bly*, (2 CA–CR 1865, filed February 15, 1980), *review granted*, No. 4958–PR (April 15, 1980); *State v. Rodriguez*, 126 Ariz. 104, 612 P.2d 1067 (1980).

The judgments of conviction and sentences are vacated, the dismissed counts of the indictment are reinstated, and the matter is remanded to the trial court for further proceedings.

JACOBSON, P. J., and CONTRERAS, J., concur.

9.  *See North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).